Report Date: January 17, 2019

# United States District Court

### for the

### Eastern District of Washington

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 17, 2019

SEAN F. McAVOY, CLERK

### Petition for Warrant or Summons for Offender Under Supervision

Name of Offender: Jason Michael Stalkfleet         Case Number: 0980 2:08CR06075-EFS-1

Address of Offender: ▮

Name of Sentencing Judicial Officer: The Honorable Edward F. Shea, Senior U.S. District Judge
Name of Supervising Judicial Officer: The Honorable Mary K. Dimke, U.S. Magistrate Judge

Date of Original Sentence: September 16, 2009

| | | |
|---|---|---|
| Original Offense: | Distribution of a Controlled Substance - Heroin, 18 U.S.C. § 841(a); Distribution of a Controlled Substance - Heroin, 21 U.S.C. § 841(a); Distribution of a Controlled Substance - Heroin, 21 U.S.C. § 841(a); | |
| Original Sentence: | Prison - 96 months; TSR - 72 months | Type of Supervision: Supervised Release |
| Revocation Sentence: May 16, 2017 | Prison - 16 months; TSR - 38 months | |
| Asst. U.S. Attorney: | Troy J. Clements | Date Supervision Commenced: August 16, 2018 |
| Defense Attorney: | Stephen J. Roberts | Date Supervision Expires: October 15, 2021 |

### PETITIONING THE COURT

To issue a warrant.

The probation officer believes that the offender has violated the following conditions of supervision:

| Violation Number | Nature of Noncompliance |
|---|---|
| 1 | **Special Condition # 4**: You must abstain from the use of illegal controlled substances, and must submit to urinalysis and sweat patch testing. As directed by the supervising officer, but no more than 6 tests per month, in order to confirm continued abstinence from these substances. |
| | **Supporting Evidence**: The offender is considered to be in violation of his period of supervised release by using controlled substances methamphetamine, morphine, suboxone, and fentanyl on or prior to December 26, 2018. |
| | On August 16, 2018, the offender signed his Judgement in a Criminal Case stating he understood that he could not use illegal controlled substances. |

On October 5, 2018, the offender signed his Treatment Services Contract Program Plan which directed him to call Merit Resource Services daily and report for random drug testing when the color Brown was called. The color changed to white on October 22, 2018, after the offender joined the STEP program in Richland.

On December 26, 2018, the offender reported to the probation office and admitted he had been using methamphetamine, heroin, and possibly fentanyl between December 22 and 25, 2018. The color line had directed everyone assigned the color white to report for random testing on December 26, 2018, so the offender was directed to report to Merit Resource Services to provide his sample. He was also directed to speak with his counselor about the use.

The offender reported as directed and a sample was taken. The sample was forwarded to Alere for confirmation. The sample returned positive for the presence of methamphetamine, morphine, suboxone, and fentanyl on January 6, 2019.

2      **Mandatory Condition # 2**: You must not unlawfully possess a controlled substance, including marijuana, which remains illegal under federal law.

**Supporting Evidence**: The offender is considered to be in violation of his period of supervised release by possessing a controlled substance, methamphetamine, on or prior to January 10, 2019.

On August 16, 2018, the offender signed his Judgement in a Criminal Case stating he understood he could not illegally possess a controlled substance.

On January 15, 2019, the offender reported to the probation office in Richland. When the urine sample he provided returned presumptive positive for the presence of methamphetamine, the offender noted he had returned home on January 10, 2019, to find his wife passed out on the couch of his home with methamphetamine by her. He went on to admit he obtained the methamphetamine and used it.

3      **Standard Condition # 8**: You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must no knowingly communicate or interact with that person without first getting the permission of the probation officer.

**Supporting Evidence**: The offender is considered to be in violation of his period of supervised release by associating with Glenna Stalkfleet on January 14, 2019, while she was in possession of illegal controlled substances.

On August 16, 2018, the offender signed his Judgement in a Criminal Case stating he understood he could not associate with anyone who was engaged in criminal activity.

On January 14, 2019, the offender was contacted at his residence during a random home inspection. Upon being contacted, the offender stated his wife, Glenna Stalkfleet, was in his bedroom. The offender had been warned multiple times not to associate with his wife as she has a pending drug charge in Benton County Superior Court and he had admitted she had a

drug use problem which was out of control. A request to conduct a walk through of the residence was made. The offender initially showed the living room area, kitchen, bathroom, and then his kids room. When asked about his room, the door was shut and he asked Glenna if she was dressed. After being told to come in the door was opened. Immediately noted was a piece of tinfoil on top of the garbage can just inside the door on the floor to the left. The foil had a black burn mark across it. A bag full of orange colored pills, which Glenna stated were "Gabapentin" was viewed sitting on top of a dresser across the room. Glenna was in the closet when we first entered the room. The offender was asked about the foil as this officer has seen this type of paraphernalia used for consuming controlled substances in the past. The offender immediately stated it was not his. Glenna then stated it was hers and added she was trying to get clean. When asked about the pills, the offender again stated they were not his and Glenna stated they were hers. Glenna then added she was struggling with her addiction and stated she had a "kit and other stuff" in the closet. She pointed to a tray on a shelf in the closet. Both were asked to return to the living room area with this officer. Once in the living room, they were advised the West Richland Police Department was going to be contacted due to the items viewed in plain sight. Both were also reminded we had been in this situation back in early 2017, prior to the offender's last revocation hearing.

Contact was made with dispatch and several officers with the West Richland Police Department responded. The officers were advised of the offender's status on supervised release, what had been seen in the bedroom, and their statements about the foil and pills. Officers were escorted to the bedroom and shown the items. Glenna was asked to return to the bedroom. She was reminded that she had stated the foil and pills were hers and was asked what was going on. She stated the items were hers and she had other drugs and paraphernalia in the room. She admitted she had been "shooting up" when this officer first arrived at the front door. Glenna again noted the "kit" on the shelf in the closet. This officer asked if she minded if I took a look and she agreed. Nothing was located in the tray. She then stated it might be in the box under the tray, which had just been looked at. Again, this officer asked if she minded if I looked at the other box and she agreed. Only a "hooka pipe" was in the box. At that point, Officer Eduardo Magana mirandized Glenna and she agreed to talk. She continued to say she had drugs and other drug related items in the room and in her car. She advised this officer she had needles in the closet and pointed to two boxes on a shelf inside the closet to the left. When asked if this officer could look in them, she agreed. There were two boxes of unused needles. One box was full of needles, and the other was half full but contained a small digital scale which had no batteries. Glenna continued to say most of her drug related items were in the car but she had things in the room. When asked if we could look in the car, she agreed but the keys could not be located. Glenna stated the keys may be under the blankets on the bed. She also noted some of her drug related items may be in the bed and she attempted to reach for the blankets. She was directed not to reach for the blanket. She was asked if we could move the blankets and she agreed. Upon pulling the blanket back, multiple used and unused syringes, a black bag, a bottle with a white substance, two small plastic bags containing a white substance, and a small container with a brown substance were viewed. Inside the container with the white substance was another orange and white container. When asked about the items, Glenna admitted they were hers and the white substance in the small plastic bags was methamphetamine and the brown substance in the small container was heroin. She noted the syringes were hers and were filled with "blood." The syringes had a brown substance in them.

Glenna was asked about the black bag which was unzipped and lying on the bed. She agreed to allow us to look inside the bag. She confirmed there were "Mexi's" in it and several pills were located. "Mexi's" are what street users call pressed pills containing fentanyl. A scale was also located in the bag and Officer Magana asked Glenna about some Suboxone which was viewed in the bag. Glenna stated she was trying to clean herself up.

Glenna continued to say she had "lots of stuff" in her car. Glenna was placed in restraints by Officer Magana. This officer contacted Supervising United States Probation Officer Jose Vargas to request a search based upon what had been located. This officer requested to search the bedroom area, living room area, car, and garage. Approval was granted based upon what had been seen and located.

Contact was made with the offender in the living room and he was advised a search was going to be conducted. He was asked about any other items which might be located. He stated he did not know what Glenna might have in the room and he did not know of any items which might injure officers.

A short search was conducted on the rest of the bedroom. There was a safe located in the closet which Glenna stated was hers. She further indicated her drugs were in it. A request for the combination was made but she stated only the key worked to open it. According to Glenna, the safe key was on her key chain. The offender then advised officers in the livingroom that the keys may be in Glenna's car. He added they had been passing the keys back and forth earlier in the evening. This officer escorted the offender to the car and he retrieved the keys from the driver's seat. The keys were then taken to the safe and it was opened. Inside of the safe was a syringe with a clear substance in it, six small plastic bags containing a white substance, multiple Ipads, two spoons tied together with a rubber band, and one of the spoons had a blue residue on it. Glenna advised the six small bags containing the white substance was Epson salt.

After reviewing all the evidence, it was decided a warrant would be requested by the West Richland Police Department to search the vehicle. The vehicle was going to be impounded and searched at a later time. Glenna Stalkfleet was arrested and charged with drug related crimes. Officers obtained the information on the children who were in the home at the time so Child Protective Services could be notified.

The offender was directed to report to the probation office at 8 a.m. on January 15, 2019, to submit a drug test, and the residence was cleared. The offender was also reminded all of the items located were in his home, in his room, in his bed, and in his closet. The offender admitted he had allowed Glenna to come to his home.

| | |
|---|---|
| 4 | **Standard Condition # 5**: You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible, due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change, or expected change |

**Supporting Evidence**: The offender is considered to be in violation of his period of supervised release by failing to notify probation about Glenna Stalkfleet moving into his residence on or prior to January 14, 2019.

On August 16, 2018, the offender signed his Judgement in a Criminal Case stating he understood he must notify probation about any changes to individuals living at his residence.

As noted above within violation #3, Glenna Stalkfleet was located at the offender's residence on January 14, 2019. The offender had stated on multiple occasions that Glenna had been using drugs and failing to enter inpatient drug treatment. As part of STEP, he was warned about associating with his wife due to her drug abuse issues. The offender had stated he had spoken with his wife but never advised she had moved in to the home. During the contact and subsequent search of the offender's bedroom, Glenna's clothes, shoes, and personal items were all over in the room. The safe in the closet was noted as being hers and she had the key on her key chain. The safe was pushed behind clothes on the floor of the closet. The time of the contact was about 8 p.m. and she was in the bedroom when I arrived. I had to wait for her to get dressed prior to entering the bedroom. Also noted by the offender, on January 15, 2019, Glenna was at his home passed out on his couch with methamphetamine around her, on January 10, 2019.

5      **Special Condition # 4**: You must abstain from the use of illegal controlled substances, and must submit to urinalysis and sweat patch testing as directed by the supervising officer, but no more than 6 tests per month, in order to confirm continued abstinence from these substances.

**Supporting Evidence**: The offender is considered to be in violation of his period of supervised release by using controlled substances, methamphetamine, on or prior to January 15, 2018.

On August 16, 2018, the offender signed his Judgement in a Criminal Case stating he understood he could not use illegal controlled substances.

On January 14, 2019, the offender was directed to report to the probation office at 8 a.m. on January 15, 2019, to submit a urine sample for testing.

On January 15, 2019, the offender reported to the office and supplied a sample which returned presumptive positive for the presence of methamphetamine. When questioned about the sample, he admitted he had last used methamphetamine on January 10, 2018, when he came home and found his wife passed out on the couch with methamphetamine by her. The sample was forwarded for confirmation on the methamphetamine and to be tested for fentanyl and suboxone. Results are pending at this time.

6      **Special Condition # 3**: You must undergo a substance abuse evaluation and, if indicated by a licensed/certified treatment provider, enter into and successfully complete an approved substance abuse treatment program, which could include inpatient treatment and aftercare upon further order of the court. You must contribute to the cost of treatment according to

your ability to pay. You must allow full reciprocal disclosure between the supervising officer and treatment provider.

**Supporting Evidence**: The offender is considered to be in violation of his period of supervised release by failing to comply with chemical dependency treatment.

On August 16, 2018, the offender signed his Judgement in a Criminal Case stating he understood he must participate in substance abuse treatment and follow the rules and regulations of the program.

On October 5, 2018, the offender signed his Treatment Services Contract Plan stating he understood he needed to participate in intensive outpatient treatment.

On January 16, 2019, contact was made with Merit Resource Services about the admitted drug use and items located in his home. According to Merit personnel the offender is considered to be in noncompliance with his treatment program at this time.

The U.S. Probation Office respectfully recommends the Court issue a warrant requiring the defendant to appear to answer to the allegations contained in this petition.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: 1/17/2019

s/David L. McCary

David L. McCary
U.S. Probation Officer

THE COURT ORDERS

[ ] No Action
[X] The Issuance of a Warrant
[ ] The Issuance of a Summons
[ ] Other

Signature of Judicial Officer
1/17/2019

Date